FILED
2013 Apr-12  AM 09:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| MAXINE WARE and ELBERT WARE, | ) | |
| | ) | |
| Plaintiffs; | ) | |
| | ) | |
| vs. | ) | 7:11-cv-4272-LSC |
| | ) | |
| NATIONWIDE INSURANCE COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

## I.    Introduction

Before the Court is a Motion for Summary Judgment (Doc. 21), filed on November 30, 2012, by Defendant Nationwide Property & Casualty Company (improperly designated in this lawsuit as Nationwide Insurance Company) ("Nationwide"). Nationwide seeks summary judgment as to Maxine and Elbert Ware's ("Plaintiffs'") claims for breach of contract, bad faith failure to pay, and bad faith failure to investigate. Additionally, the Court has for consideration a Motion to Strike (Doc. 24), filed by Nationwide on December 12, 2012, wherein Nationwide asks this court to strike several exhibits Plaintiffs submitted contemporaneously with their

response to Nationwide's Motion for Summary Judgment. For the reasons stated below, Nationwide's Motion to Strike (Doc. 24) is due to be GRANTED in part and DENIED in part, and its Motion for Summary Judgment (Doc. 21) is due to be GRANTED in all respects.

## II.   Facts

Nationwide provided homeowners' insurance for Plaintiffs' home pursuant to Homeowners Policy No. 77 01 HP189164 (the "Policy"). (Doc. 22-1.) This action arose after Nationwide refused to provide coverage under the Policy for water damage inside the home. Plaintiffs contend that the water damage was a result of a leaking roof brought on by heavy rains. Nationwide, on the other hand, contends that the damage is attributable to surface and ground water accumulation, making it a non-covered loss under the Policy.

The Policy contained an exclusion for water damage and damage caused by water-borne material, which provides in pertinent part:

1.   We do not cover loss to any property resulting directly or indirectly from any of the following.
    . . . .

   b)   Water or damage caused by water-borne material. Loss resulting from water or water-borne material described below is not covered even if other perils contributed, directly or indirectly to cause the loss. Water and water-borne material damage means:

(1)    flood, surface water . . . .

. . . .

(3)    water or water-borne material below the surface of the ground, including water or water-borne material which exerts pressure on, seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, or other structure.

(*Id.* at 16.)

On or about October 22, 2009, Plaintiffs filed an insurance claim under the Policy for water damage to their home. Specifically, Plaintiffs cited water damage to the flooring, as well as mold growth throughout the home. On October 28, 2009, Nationwide's claim adjuster, Ray Posey, visited Plaintiffs' home and performed an inspection. During the inspection, Posey took photographs, looked at the floors, and examined the moisture content in the house using a moisture meter. Posey also crawled under the house, where he discovered six to eight inches of standing water in the crawlspace. Posey ultimately determined that the standing water in the crawlspace was the source of the damage reported in Plaintiffs' insurance claim. Unable to detect leaking pipes or other sources of the water, Posey concluded that standing water in the crawlspace was a result of surface and ground water accumulation—a cause of loss not covered under the Policy. Posey informed Plaintiffs about his findings, and advised

them to remove the standing water and take appropriate action to prevent it from reentering.

As a result of Posey's finding, Nationwide sent a letter to Plaintiffs on November 4, 2009, informing them that the damages reported were not covered under the Policy pursuant to the water damage exclusion cited above. (Doc. 22-4.) Believing that the water damage was a result of a storm-damaged roof, Plaintiffs contacted Nationwide again in January 2011, to ask that their claim to reconsidered. In response, Nationwide sent Posey back to Plaintiffs' home, this time with a roofing expert. Posey and the roofing expert performed an inspection of the exterior of the roof and the interior of the attic, but were unable to find evidence of water penetration through the roof or damage to the roof that would have allowed water inside the home. (Doc. 22-7.) On February 18, 2011, Nationwide sent Plaintiffs a letter, reaffirming their position that the water damage was a result of causes not covered under the Policy. (Doc. 22-8.)

On March 21, 2011, the Policy expired, as Nationwide refused to continue the Policy after discovering structural hazards during a property inspection. (Doc. 22-6.) In the fall of 2011, after the Policy expired, Plaintiffs asked Nationwide to reconsider their claim a final time. (Doc. 21 at 8.) In response to this request, Nationwide

contracted a private engineering firm, Donan Engineering Company ("Donan"), to perform an inspection of the home. The stated purpose of Donan's inspection was "to determine the integrity of the roof and the cause of water intrusion into the crawlspace." (Doc 22-11.) While Donan noted a dent in one of the metal roofing panels, it issued a report stating that the damaged roofing panel could not have caused the water damage listed in Plaintiffs' insurance claim.[1] (Doc. 22-11 at 9–10.) In their post-inspection report, Donan also reaffirmed Posey's conclusion that the water damage to Plaintiffs' home was a result of surface water runoff and ground saturation, citing poor grading and insufficient ground sloping as the reason for the water buildup. (*Id.* at 10.) Based on Donan's report, Nationwide once again informed Plaintiffs that it was declining to provide coverage for the water damage. Following Nationwide's final refusal, Plaintiffs filed the instant action, asserting claims for breach of contract, bad faith failure to pay, and bad faith failure to investigate. (Doc. 1.)

Plaintiffs disagree with Nationwide's finding concerning the cause of the water damage. They contend that storms in September and October of 2009 damaged the roof and ultimately caused water damage to their home. (Doc. 23 at 1–2.) In support of this position, Plaintiffs offered the affidavit of William Petty, the individual who

---

[1] Nationwide asserts that this single wind-damaged roofing panel is a result of severe whether and tornados that occurred in April 2011, after the Policy was cancelled. (Doc. 22-15 at 2.)

originally installed the roof and allegedly inspected it after the storms in 2009. (Doc 23-1.) Petty attests that based on his "30 years of experience in the roofing and remodeling business," the damage to the roof allowed water to leak into the ceiling and walls of Plaintiffs' home and likely caused the water damage forming the basis of Plaintiffs' insurance claim. (*Id.*) Petty further attests that the storms also caused damage to the cover of the central heating and air conditioning unit, which allowed rain to run on top of the air conditioner and flow under the house. (*Id.*)

Nationwide moved to strike Petty's testimony on grounds that his statements are expert opinion under Fed. R. Evid. 702, but he was never disclosed as an expert in accordance with the Court's scheduling order or in response to Nationwide's requests for disclosure. (Doc. 24.) The Court addresses Nationwide's Motion to Strike in part IV, *infra*, before turning to the merits of Nationwide's Motion for Summary Judgment.

## III.   Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for

summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet this burden, the movant can present evidence showing that there is no genuine dispute of material fact, or show that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

## IV.   Motion to Strike

In its Motion to Strike, Nationwide's asks the Court to strike certain portions of Plaintiffs' evidentiary filings submitted contemporaneously with their response to Nationwide's Motion for Summary Judgment. First, Nationwide asks this Court to strike the expert disclosure portion of Plaintiffs' Exhibit 1. Plaintiffs' Exhibit 1 is the affidavit of William Petty ("Petty") (Doc. 23-1), the individual who originally installed Plaintiffs' roof and subsequently made repairs to the roof in the winter of 2009. In his affidavit, Petty attests that Plaintiffs' roof was damaged by storms in late 2009. (*Id.*) Petty, goes on to state that  based on his "30 years of experience in the roofing and remodeling business," the damage to the roof allowed water to leak into the ceiling and walls of Plaintiffs' home. (*Id.*) Additionally, Petty attests that the same storms which caused the roof damage also damaged the cover of the central heating and air conditioning unit, which allowed rain to run on top of the air conditioner and flow under the house. (*Id.*)

Nationwide contends that Petty's testimony amounts to expert testimony, and should be stricken because Plaintiffs never disclosed an expert or provided an expert report as required by this Court's order. This Court entered a Scheduling Order on March 19, 2012, which required that all experts be disclosed by August 31, 2012. To

date, Plaintiffs have not disclosed an expert or provided Nationwide with an expert report. Moreover, during the discovery phase, Nationwide specifically requested the identification of experts that Plaintiffs intended to utilize in this matter, but Plaintiffs did not disclose any experts in response to these requests. On January 2, 2013, this Court issued an order directing Plaintiffs to respond within eleven (11) days to Nationwide's motion to strike. (Doc. 26.) As of the date of this opinion, Plaintiffs have not yet offered a response.

After evaluating Plaintiffs' Exhibit 1, it is clear that aspects of Petty's testimony consist of expert opinion. First, the affidavit makes what appears to be an effort to qualify Petty as an expert by stating that his opinion is based on "30 years of experience in the roofing and remodeling business." (Doc. 23-1.) Second, Petty's attestations are beyond the scope of run-of-the-mill lay testimony. Petty testified that the roof and air conditioner were both damaged by a storm, and that such damage resulted in water entering the ceiling and walls of the home and flowing under the house. This is not testimony that is within the understanding of a common lay witness. While a lay witness may be able to recognize and testify about whether a roof is damaged, such a witness is not capable of reaching an informed conclusion about whether that damage arose due to a product defect, poor workmanship, natural wear

and tear, storm damage, or some other cause. Additionally, a lay witness would not be capable of opining that a storm-damaged roof resulted in specific water damage in the ceiling, or that a storm-damaged air conditioning unit resulted in standing water under the house. Instead, these are all determinations reserved for someone with specialized knowledge. *See* Fed. R. Civ. Evid. 701(c) (stating that lay witness opinion must "not [be] based on scientific, technical, or specialized knowledge withing the scope of Rule 702").

There would be substantial injury if Plaintiffs were permitted to offer expert testimony at this late stage of the proceeding. Nationwide has not been afforded an opportunity to depose Petty, nor are they permitted to do so since the discovery deadline has long since expired. Thus, Nationwide's Motion to Strike (Doc. 24) is due to be GRANTED with respect to Exhibit 1, and the portions of Petty's proffered testimony consisting of expert opinion are due to be stricken. Specifically, the Court refuses to consider Petty's testimony that (1) the roof was damaged because of wind and storms, (2) the damage to the roof allowed water to leak into the ceiling and walls of Plaintiffs home, (3) the air conditioning unit was damaged because of wind and storms, and (4) the damage to the air conditioning unit allowed water to flow under the house.

Nationwide also asks the Court to strike Plaintiffs' Exhibit 2 because it consists of inadmissable hearsay. Plaintiffs' Exhibit 2 includes copies of newspaper articles describing heavy rains in Alabama in September and October of 2009. As discussed in greater detail below, *see infra* n.2, it is not enough for Plaintiffs to establish that heavy rains occurred in Alabama in 2009. Rather, Plaintiffs must demonstrate that the water from those rains entered the home through the allegedly storm-damaged roof and air conditioning unit. Plaintiffs have failed to make such a showing. Thus, because the evidence presented in Plaintiffs' Exhibit 2 is insufficient to help Plaintiffs' survive summary judgment, Nationwide's motion to strike Exhibit 2 is moot, and therefore DENIED.

## V.     Motion for Summary Judgment

Nationwide seeks summary judgment on Plaintiffs' claims for breach of contract, bad faith failure to pay, and bad faith failure to investigate. Each claim will be addressed in turn.

### A.     Breach of Contract

"A contract of insurance, like other contracts, is governed by the general rules of contracts." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001). The material elements necessary to establish a cause of action for breach of

contract under Alabama law are: "(1) a valid contract binding the parties; (2) the plaintiff['s] performance under the contract; (3) the defendant's non performance; and (4) resulting damages." *Reynolds Metal Co. v. Hill*, 825 So. 2d 100, 105–106 (Ala. 2002) (citing *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999)). Nationwide contends that Plaintiffs have not produced sufficient evidence to establish its non-performance of the contract. Specifically, Nationwide asserts Plaintiffs have failed to produce any evidence showing that the water damage to their home was a "covered loss" under the Policy, and thus have not shown that Nationwide was obligated to make a payment on Plaintiffs' claim.

In Alabama, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, while the insurer bears the burden of proving the applicability of any policy exclusion. *See, e.g.*, *Colonial Life & Accident Ins. Co. v. Collins*, 194 So. 2d 532, 535 (Ala. 1967); *U.S. Fidelity. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985). However, the insurer's burden to prove the applicability of an exclusion does not "shift[] the general burden of proof from plaintiff to defendant." *Belt Auto. Indem. Ass'n v. Ensley Transfer & Supply Co.*, 99 So. 787, 790 (Ala. 1924). Rather, "when the defendant has offered evidence showing

prima facie that the case is one of specified nonliability, the burden of showing a case within the operation of the policy remains upon the plaintiff." *Id.*

Nationwide has offered sufficient evidence of nonliability pursuant to the Policy's water damage exclusion, including evidence from Posey's initial inspection, Posey's second inspection with a roofing expert, and the inspection of an independent engineering company—all three of which were consistent in finding that the water damage to Plaintiff's home arose from ground water accumulation not covered under the Policy. Despite this evidence, Plaintiffs contend they have put forth enough evidence to avoid summary judgment and to create a jury question regarding whether the damage is excluded under the Policy. Specifically, Plaintiffs rely on Petty's testimony that the water damage was caused by leakage from the allegedly storm-damaged roof.

The problem with Plaintiffs' argument is that Petty's testimony has very little probative value. As discussed earlier in this opinion, the Court cannot consider Petty's testimony to the extent he offers an expert opinion. *See supra* Part IV. If Plaintiffs had timely disclosed Petty as an expert, his opinion would perhaps have created a genuine issue of material fact regarding whether the allegedly storm-damaged roof actually caused water damage in the home. But since Petty was not disclosed as an expert, the

Court can only consider those portions of his testimony that are admissible by a lay witness. In other words, Petty's testimony is only admissible to the extent it involves his first-hand knowledge of the damage to the roof and water damage to the home. *See* Fed. R. Evid. 701. However, Plaintiffs have not made the necessary showing that Petty has first-hand knowledge of the roof damage or water damage, as would be required for lay testimony. Petty did not witness the storm damaging the roof, nor does he allege observing the water actually entering the home. Rather, his testimony is based on his after-the-fact inspection and his "30 years of experience in the roofing . . . business." (Doc. 23-1.) Presented in this format, Petty's testimony cannot be fairly classified as lay testimony, and to the extent it is offered as such, is undoubtedly inadmissible at the summary judgment stage just as it would be at trial.

Additionally, Plaintiffs wrongly assert that expert testimony is not required to prove their case. While it may be true that an expert is not required in all breach of contract cases, here the crucial question—whether the water damage came from ground water accumulation or a roof defect—is not one a lay witness can answer. A lay witness is not capable of testifying about whether roof damage arose due to a product defect, poor workmanship, natural wear and tear, storm damage, or some other cause. Nor is a lay witness capable of opining that a storm-damaged roof resulted

in specific water damage in the ceiling, or that a storm-damaged air conditioning unit resulted in standing water under the house. *See* Fed. R. Civ. Evid. 701(c) (stating that lay witness opinion must "not [be] based on scientific, technical, or specialized knowledge withing the scope of Rule 702"). Rather, expert testimony would be required on these disputed points.

Importantly, this conclusion is supported by precedent from this Court and the Eleventh Circuit. *See Nix v. State Farm Fire & Cas. Co., Inc.*, 444 Fed. App'x 388, 390 (11th Cir. 2011). In *Nix*, the Eleventh Circuit affirmed this Court's decision granting summary judgment in favor of an insurance company based on virtually identical facts as those presently before the Court. In *Nix*, coverage was denied for a wall that collapsed in the plaintiffs' basement. In support of its summary judgment motion, the insurance company offered expert testimony that the wall collapsed because it was not properly designed or built. The plaintiffs argued that a burst water pipe caused the collapse. As in this case, the plaintiffs neglected to offer expert testimony in rebuttal, but rather only offered two lay witnesses—the homeowner and a contractor. The Eleventh Circuit explained that the plaintiffs' witnesses did not observe the wall collapse or have personal knowledge of the construction, and therefore were inadmissible lay opinion testimony as to the cause. *Nix*, 444 Fed. App'x at 390. As

such, the "uncontroverted evidence" from the insurance company's expert established that the claim was excluded from coverage. *Id.*

As in *Nix*, Petty's testimony is not based on first hand knowledge, and therefore is not admissible as a lay witness's opinion. Consequently, Plaintiffs have no evidence at all to counter Nationwide's position that the water damage arose from surface and ground water accumulation.[2] Without evidence that their loss is covered by the Policy, Plaintiffs cannot show Nationwide breached the terms of the Policy by refusing to pay their claim. As in *Nix*, Plaintiffs are unable to rebut Nationwide's "uncontroverted evidence." Therefore, Nationwide's Motion for Summary Judgment is due to be GRANTED with regard to Plaintiffs' breach of contract claim.

**B.      Bad Faith Claims**

In their complaint, Plaintiffs assert two different bad faith claims: (1) bad faith failure to pay ("normal" bad faith) and (2) bad faith failure to investigate ("abnormal" bad faith). Plaintiffs' responsive brief fails to distinguish between these two claims. However, because these two causes of action are distinct and should not

---

[2]Plaintiffs additionally offer newspaper excerpts detailing the heavy rain that occurred in September and October of 2009. *See* Doc. 23-2. However, these excerpts are merely evidence showing that such rains occurred; the newspaper reports do nothing to show that the rain was the cause of the damage to Plaintiffs' roof and home.

be confused, the Court addresses them separately. *See, e.g.*, *Jones v. Alfa Mut. Ins. Co.*, 1 So. 3d 23 (Ala. 2008).

### 1) Bad Faith Refusal to Pay

In order to establish a claim of bad faith refusal to pay under Alabama law, a plaintiff must prove: "(1) the existence of an insurance contract; (2) an intentional refusal to pay the claim; and (3) the absence of any lawful basis for refusal and the insurer's knowledge of that fact or the insurer's intentional failure to determine whether there is any lawful basis for its refusal." *Acceptance Ins. Co. v. Brown*, 832 So.2d 1, 16 (Ala. 2001). "If [the plaintiff's] evidence fails to eliminate any arguable reason for denying payment, any fairly debatable reason on a matter of fact or a matter of law, he cannot recover under the tort of 'bad faith refusal [to pay].'" *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 185 (Ala. 1982). In fact, a plaintiff's burden is so heavy that "[f]or a 'normal' bad-faith claim to be submitted to the jury, the underlying contract claim must be so strong that the plaintiff would be entitled to a preverdict judgment as a matter of law." *Shelter Mut. Ins. Co. v. Barton*, 822 So.2d 1149, 1155 (Ala. 2001). Thus, "if the evidence produced by either side creates a fact issue with regard to the validity of the claim and thus, the legitimacy of the denial thereof, the

tort claim must fail." *Nat'l Savings Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982).

Plaintiffs' breach of contract claim hinges on a factual issue: whether a leaky roof or standing water caused the water damage to their home. It is undisputed that Nationwide's claim adjuster investigated Plaintiffs' home on two separate occasions and that Nationwide hired an a private engineering firm to conduct a third inspection. After each of these inspections, Nationwide received oral and written reports stating that standing water runoff and surface water accumulation—a cause of loss excluded by the Policy—caused the water damage to Plaintiffs' home. In refusing payment on Plaintiffs' insurance claim, Nationwide articulated its belief that these reports were accurate. Nationwide offered enough evidence to establish a "fairly debatable reason" for the denial. *Bowen*, 417 So. 2d at 185. And Plaintiffs did not produce any evidence to eliminate "any arguable reason" for Nationwide to deny payment. *Id*. Thus, Nationwide presented reasonable grounds for disputing Plaintiffs' claim, thereby making summary judgment appropriate on the bad faith claim.

Furthermore, as outlined above, there is certainly not evidence to entitle Plaintiff to a preverdict judgment as a matter of law. In fact, as discussed above, the Court has concluded that Plaintiffs' breach of contract claim fails as a matter of law.

Because summary judgment is due to be granted against Plaintiffs' breach of contract claim, Plaintiffs' bad faith claim certainly cannot survive. Therefore, Nationwide's Motion for Summary Judgment is due to be GRANTED with regard to Plaintiffs' bad faith failure to pay claim.

### 2)   Bad Faith Failure to Investigate

In order to recover under an "abnormal" bad faith failure to investigate theory, the a plaintiff must show "(1) that the insurer failed to properly investigate the claim or subject the results of the investigation to a cognitive evaluation and review and (2) that the insurer breached the contract for insurance coverage with the insured when it refused to pay the insured's claim." *Slade*, 747 So. 2d at 318. "Practically, the effect is that in order to prove a bad-faith-failure-to-investigate claim, the insured must prove that a proper investigation would have revealed that the insured's loss was covered under the terms of the contract." *Id.*

Unlike a "normal" bad faith claim, "[t]he rule in 'abnormal' cases dispensed with the predicate of a preverdict JML [judgment as a matter of law] for the plaintiff on the contract claim." *White v. State Farm Fire & Cas. Co.*, 953 So. 2d 340, 348 (Ala. 2006). That said, an abnormal bad faith claim is still ultimately dependent on the breach of contract claim, since a plaintiff may not recover under an abnormal bad faith

claim unless the defendant is found liable under the breach of contract theory as well. *See Slade*, 747 So. 2d at 318 (stating that, while abnormal bad faith cases are excepted from the JML standard of proof, the plaintiff must still ultimately "prove an entitlement to benefits under the policy"). Thus, because the Court has already determined that summary judgment is due to be entered against Plaintiffs on their breach of contract claim, their abnormal bad faith claim must fail as well.

Notwithstanding the foregoing analysis, the Court would reach the same conclusion even if summary judgment were not due to be entered in Nationwide's favor on the breach of contract claim. Plaintiffs do not dispute that Nationwide conducted three separate inspections of the water damage in their home, including one which was performed by an independent private engineering firm. Both Nationwide's adjuster and the private engineer submitted oral and written reports concluding that the water damage resulted from surface water accumulation, and not damage to the roof. Plaintiffs have not offered any suggestion about what type of additional investigation should have been performed, much less have they shown that a "proper investigation" would have shown that their loss was covered under the terms of the Policy. In reality, Plaintiffs do not argue that Nationwide did not perform an adequate investigation. Rather, they simply take issue with Nationwide's post-

inspection conclusion that a leaky roof did not cause the water damage to Plaintiffs' home.

The uncontested evidence shows that Nationwide conducted a complete evaluation of Plaintiffs' home before denying payment. Furthermore, the Court has already found that Plaintiffs failed to establish a prima facie case of breach of contract. For these reasons, Nationwide's Motion for Summary Judgment is due to be GRANTED with regard to Plaintiffs' bad faith failure to investigate claim.

## VI.   Conclusion

For the reasons stated in this opinion, Nationwide's Motion to Strike (Doc. 24) is due to be GRANTED in part and DENIED in part, and Nationwide's Motion for Summary Judgment (Doc. 21) is due to be GRANTED in all respects. A separate order will be issued consistent with this opinion.

Done this 12th day of April 2013.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[170956]